# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| BEVERLY ANN HUTSON, Plaintiff, v. MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant. | No. ED CV 08-01085-VBK<br>MEMORANDUM OPINION AND ORDER<br>(Social Security Case) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

considered the treating psychiatrist's opinion;

2. Whether the ALJ properly developed the record;

3. Whether the ALJ properly considered the lay witness statements by Plaintiff's husband;

4. Whether the ALJ properly represented the evidence regarding Plaintiff's "decompensation;"

5. Whether the ALJ properly represented the evidence regarding the severity of Plaintiff's mental impairments.

(JS at 2-3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY ADDRESSED THE ISSUE OF PLAINTIFF'S ASSERTED MENTAL IMPAIRMENT**

Plaintiff's Issues 1, 2, and 5 each address whether the ALJ properly assessed Plaintiff's asserted mental impairment. Issue No. 1 specifically asks whether the ALJ properly considered the opinion of Plaintiff's treating psychiatrist. Issue No. 2 constitutes Plaintiff's contention that the ALJ failed to develop the record with regard to additional records from her psychologist, Dr. Jackson. Issue No. 5 asserts, generally, that the ALJ did not properly address the severity of Plaintiff's mental impairments.

The ALJ's decision (AR 8-14) devotes a page and a half to the assessment of Plaintiff's asserted mental impairment. (AR 11-12.) The ALJ first summarized the results of a complete psychiatric evaluation

("CE") performed on January 15, 2007 at the request of the Department of Social Security by Dr. Smith. (AR 11, 358-364.) As the ALJ noted, the examiner agreed with Plaintiff that her depressive symptoms are secondary to her altered life and her medical issues, and further assessed that there were only minor problems with regard to Plaintiff's mental status evaluation. As the ALJ noted, the CE concluded that Plaintiff was not seriously impaired. (Id.)

The ALJ next noted that Plaintiff began counseling with Dr. Jackson, a clinical psychologist, in July 2007. (AR 11, 442.) Then, Plaintiff began seeing a psychiatrist, Dr. Ohiaeri, in September 2007, and in the decision, the ALJ summarized Dr. Ohiaeri's conclusions, noting that the psychiatrist introduced medications and noted improvement with results representative of mild to moderate symptoms. (AR 11, 444-450.)

The ALJ noted that psychological reviewers at previous levels of adjudication concluded that Plaintiff's mental impairment is not severe. (AR 11, 366.)

While acknowledging that Plaintiff has a medically determinable mental impairment of depressed mood, the ALJ found that this condition does not cause more than minimal limitation in her ability to perform basic mental work activities, and is therefore non-severe. (AR 11.) The ALJ noted that he had considered the four broad functional areas set out in the disability regulations, including activities of daily living ("ADL"), social functioning, concentration, persistence or pace, and episodes of decompensation. Each of these areas was addressed in the decision, with findings that supported a conclusion of a non-severe mental impairment. (AR 11-12.)

**A. Applicable Law.**

In evaluating psychiatric impairments, 20 C.F.R. §404.1520a(e)(1) and §416.920a(e)(1) require that consideration be given, among other things, to activities of daily living ("ADL"); social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require that consideration be given to "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to chronic mental disorders, structured settings, medication and other treatment."

20 C.F.R. §§404.1545(c) and 416.945(c) require that consideration be given to "residual functional capacity for work activity on a regular and continuing basis" and "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, [which] may reduce your ability to ... work."

The types of relevant evidence to be assessed in making these considerations are set forth in Social Security Ruling ("SSR") 85-16, which include such factors as history, findings, and observations from medical sources, reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior.

Under 20 C.F.R. §404.1520a(c)(2) and §416.920a(c)(2), consideration must be given to the extent to which a mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis ..."

The degree of functional limitations in four broad areas (ADLs; social functioning; concentration, persistence or pace; and episodes of decompensation) are evaluated; that is, as to the first three functional areas, the following five-point scale is utilized: none, mild, moderate, marked, and extreme. With regard to the fourth area, a four-point scale is utilized: none, one or two, three, four or more. (20 C.F.R. §§416.920a(3),(4) and 404.1520a(c)(3),(4).

Following the September 2000 amendments to the regulations which modified 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the Administrative Law Judge ("ALJ") is no longer required to complete and attach a Psychiatric Review Technique Form ("PRTF"). Instead, these regulations require that in the decision, the ALJ,

> "[M]ust incorporate the pertinent findings and conclusions based on the [PRTF] technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." [that is, ADLs; social functioning; concentration, persistence or pace; and episodes of decompensation.]

Further guidance is provided in SSR 85-16, which, although it does not specifically mention concentration, persistence or pace, does note, "Ability to sustain activities, interests, and relate to others over a period of time. The frequency, appropriateness, and independence of the activities must also be considered" as well as

"ability to function in a work-like situation."

When there is finding of "moderate" difficulties in the area of maintaining concentration, persistence or pace, this factor must be included in any hypothetical question posed at a hearing to a vocational expert ("VE"). Thus, one court has held that referring merely to "simple jobs" or "unskilled sedentary work" in a hypothetical question is insufficient to describe and to accommodate difficulties in this functional area. See Newton v. Chater, 92 F.3d 688 (8th Cir. 1996).

The regulations do not provide a standard definition of "moderate." (See 20 C.F.R. §416.902a(c)(4).) They do note, however, that a finding of "none" or "mild" in the first three areas "will generally [mean] that your impairment(s) is not severe, ..." See 20 C.F.R. §920a(d)(1).

**B. Discussion.**

Plaintiff first contends that the ALJ failed to properly consider the treating psychiatrist's opinion, and then refers to the treating psychologist, Dr. Jackson. (JS at 3, et seq.) It would appear, rather, that Plaintiff is referring to her psychiatrist, Dr. Ohiaeri. As to Dr. Ohiaeri, the ALJ did in fact summarize Dr. Ohiaeri's conclusions, but determined that based on clinical evidence to the contrary, such as the opinion of the CE, Plaintiff's mental impairments were non-severe.

Even if Plaintiff is referring to her psychologist, Dr. Jackson, the record contains merely a brief handwritten note by Dr. Jackson indicating that she has seen Plaintiff 11 times between July 19, 2007 and February 19, 2008; that Plaintiff was seen by her for severe

anxiety and depression, exacerbated by medical conditions; that she was referred to a psychiatrist for medication evaluation; and that she has made good use of treatment. (AR 442.) The ALJ's reference to Dr. Jackson is not inadequate, because Dr. Jackson indicated no functional limitations whatsoever.

Perhaps more appropriate to consideration of Dr. Jackson as a medical source is Plaintiff's second issue, which is that the ALJ failed to properly develop the record by obtaining documentation of the 11 mental health visits which Dr. Jackson references in her brief note. There is certainly no disagreement as to the law, which requires that where a record is inadequate to allow for proper evaluation of the evidence, the ALJ must develop the record or "conduct an appropriate inquiry." (See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).) Here, though, the record is not ambiguous. First, there is substantial evidence in the record from Plaintiff's treating psychiatrist, Dr. Ohiaeri. In addition, it is relevant to note that Plaintiff had the burden to produce evidence to the ALJ to support the existence of a severe impairment at the second step of the evaluation process. (20 C.F.R. §§404.1512(a), 404.1740(b)(1).) Of course, the fact that the burden is on the Plaintiff does not, in an appropriate case, relieve the ALJ of his own obligation to develop the evidence. But, again, that depends on the existence of an inadequacy or ambiguity which requires further development. Here, as noted, there is ample evidence in the form of the reports of the treating psychiatrist, as well as the report of the CE, Dr. Smith. Dr. Jackson's note does not give any indication of a continuing and severe mental impairment, and in fact, indicates at its conclusion that Plaintiff has made good use of her treatment.

Finally, the ALJ followed the required protocol in evaluating whether or not Plaintiff has a severe mental impairment, by reviewing the evidence concerning four broad functional areas. Plaintiff has raised no objection to the ALJ's specific evaluation of these functional areas, which is a critical component in the determination of whether a person has a severe mental impairment. Thus, the Court finds that the ALJ did not fail to develop the record with regard to obtaining further information regarding Dr. Jackson's treatment of Plaintiff.

Finally, and implicit in the Court's previous discussion, there is no error with regard to the fifth issue, with concerns, in general, the adequacy of the ALJ's evaluation of the evidence regarding the severity of Plaintiff's mental impairments. The Court has noted that the ALJ evaluated the report of the CE, as well as Plaintiff's functioning in the four critical areas relevant to a determination of the existence of a severe mental impairment. The ALJ further fully and fairly evaluated the report of the treating psychiatrist, who, although he diagnosed bipolar disorder, indicated that it is mild. (AR 444, 446-449.)

For the foregoing reasons, the Court finds no error with regard to Issues 1, 2, and 5.

**II**

**THE ALJ DID NOT FAIL TO PROPERLY CONSIDER LAW WITNESS STATEMENTS**

In her third issue, Plaintiff contends that the ALJ erred by failing to mention statements of her husband, Steven Hutson, who complete a Third Party Questionnaire. (AR 98-105.)

Plaintiff correctly cites Ninth Circuit precedent which holds

that the testimony of competent lay witnesses must be considered by the ALJ. In this case, however, for the reasons to be noted, any error must be considered harmless.

At the hearing before the ALJ (AR 28-47), Plaintiff was asked to describe the physical problems that she believes keep her from being able to work. Her testimony is set forth below:

"A Fatigue, mental fatigue, pain in all of my joints. Basically, the number one is my hands and wrists. I have very little use of them. Can do hardly anything that I used to do with my hands. And mental fatigue or physical fatigue that causes confusion. But if I do anything due to the fibromyalgia, it's running to doctors. It puts me down with pain in all my joints where you feel like you've been hit by a truck if you do anything. Like I said, just running to the doctors. It I do anything any days in a row ––

Q Okay.

A –- it causes –- it puts me down. All the joints begin to swell. If I'm stressed at all, my joints begin to swell. Not swell. I'm sorry. That's not the word. They do not swell. They hurt. They ache. I can't move them. I can't hold anything. But the mental – the fatigue completely puts me down, also. The –- if I go anywhere, do anything, whether it's fun things or doctor things, I –- I can't exert myself because then everything flares up."

(AR 33-34.)

If Plaintiff's testimony as to her physical limitations is compared to the statements of her husband, it is apparent that Mr.

Hutson's evaluation is that Plaintiff is far less limited than Plaintiff herself claims. For example, when describing her daily activities, Mr. Hutson indicated that Plaintiff, "Has coffee, takes pets outside, checks wild bird feeders, talks on phone, makes bed, does personal hygiene bath shower etc., laundry, light house cleaning runs errands if needed, light shopping if needed. Watches T.V. reads paper, visits with neighbors and friends." (AR 98.)

Similarly, Mr. Hutson indicated that Plaintiff takes care of the household pets, fees and water them, takes them outside, but has a problem pushing her tops (clothing) overhead, pulling on boots, pushing to get out of the bathtub, and has difficulty holding the blow dryer and curling iron. (AR 99.) This certainly does not approach the severity of Plaintiff's own description which is that she can hardly do anything she used to do with her hands. (AR 33.)

When describing Plaintiff's abilities in the area of house and yardwork, Mr. Hutson described Plaintiff's ability to do light cleaning, laundry, water the yard, and wash the dishes. (AR 100.) Again, this description of Plaintiff's activities far exceeds that of Plaintiff's own subjective assessments.

Based upon the foregoing analysis, it is difficult to perceive what error Plaintiff contends was committed with regard to the failure to discuss Mr. Hutson's observations. Although the ALJ did not formally discuss the observations of Plaintiff's husband, any error was clearly harmless. See Stout v. Commissioner, 454 F.3d 1050 (9th Cir. 2006). For that reason, there is no error with regard to the third issue.

//

//

**III**

**THE ALJ PROPERLY EVALUATED EVIDENCE**

**REGARDING PLAINTIFF'S DECOMPENSATION**

In her fourth issue, Plaintiff asserts that the ALJ misrepresented the evidence by indicating that Plaintiff had no episodes of decompensation. (JS at 11, citing AR 12.) Plaintiff asserts that her treatment plan (see AR at 444) indicates an increase in dosage of medications which reflects significant decompensation. (JS at 11.)

The Court agrees with the Commissioner's contention that increase in the dosages of these medications is not reflective of evidence of decompensation. Further, in order to establish a Listing Level severity of mental impairment, evidence must establish that Plaintiff experienced "repeated episodes of decompensation, each of extended duration." (See 20 C.F.R. Part 404, subpart p, Appendix I, Listing 12.00(C)(4).) Indeed, Plaintiff points to no evidence other than an increase in medications accompanied by a speculative belief that this demonstrates the necessary evidence of decompensation required under the Listing. The evidence would appear to indicate that Plaintiff has mood symptoms which are long-lasting, including fast thinking, and Plaintiff herself, according to Dr. Ohiaeri, reported that "her mood started changing after she was diagnosed with thyroid problems 20 years ago." (AR 444.)

Thus, in sum, there is nothing in the records of the treating psychiatrists which would substantiate a reasonable finding that Plaintiff has suffered the requisite symptoms to constitute episodes of decompensation. For that reason, the Court finds no error with regard to Plaintiff's fourth issue.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED**.

DATED: May 8, 2009

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE